No. 17-55565

In the

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

AMERICARE MEDSERVICES, INC.,

*Plaintiff-Appellant,*

— v. —

CITY OF ANAHEIM ET AL.,

*Defendants-Appellees.*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

No. 16-cv-01703-JLS (BGS)
The Honorable Josephine L. Staton

**APPELLANT'S PETITION FOR REHEARING EN BANC**

Jarod M. Bona
Aaron R. Gott
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858-964-4589

*Counsel for Appellant*
AmeriCare MedServices, Inc.

# TABLE OF CONTENTS

**Page**

FRAP 35(b) STATEMENT .......................................................... 1

INTRODUCTION .................................................................... 3

THE STATE POLICY ................................................................ 5

REASONS FOR GRANTING REHEARING EN BANC .......................... 8

    I.    The Panel's Decision Conflict with Prior Decisions of this Court and Binding Precedent of the Supreme Court ............. 8

        A.    The Supreme Court and this Court Grant State-Action Immunity Only to Those Who Acted Pursuant to State Competition Policy ................................................. 8

        B.    The Panel's Decision Is Inconsistent with Supreme Court and Ninth Circuit Precedent ................................. 11

    II.    The Issues Presented by this Case Are of Exceptional Importance ..................................................................... 15

        A.    The Panel's Decision Creates a Circuit Split on the Market-Participant Exception ......................................... 16

        B.    The Panel's Decision Imperils Both of the Only Two Interests the State-Action Immunity Seeks to Protect 19

CONCLUSION ...................................................................... 21

CERTIFICATE OF SERVICE ................................................... 22

CERTIFICATE OF COMPLIANCE ............................................. i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001) .............................................................. 16

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*,
155 F.3d 59 (2d Cir. 1998) ................................................................ 17

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
445 U.S. 97 (1980) ....................................................................... 8, 10

*Chamber of Commerce v. City of Seattle*,
890 F.3d 769 (9th Cir. 2018) ....................................................... *passim*

*City of Columbia v. Omni Outdoor Adver., Inc.*,
499 U.S. 365 (1991) .......................................................................... 17

*Cost Mgmt. Servs., Inc. v. Wash. Nat Gas Co.*,
99 F.3d 937 (9th Cir. 1996) ............................................................... 12

*FTC v. Phoebe Putney Health System, Inc.*,
568 U.S. 216 (2013) .................................................................... *passim*

*FTC v. Ticor Title Ins. Co.*,
504 U.S. 621 (1992) ...................................................................... 9, 12

*Genentech, Inc. v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993) ........................................................... 16

*Jefferson Cnty. Pharm. Ass'n, v. Abbott Labs.*,
460 U.S. 150 (1983) .......................................................................... 17

*Lawlor v. Natl. Screen Serv. Corp.*,
349 U.S. 322 (1955) .......................................................................... 19

*Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*,
381 U.S. 311 (1965) .......................................................................... 19

*N. Carolina State Bd. of Dental Examiners v. FTC,*
    135 S. Ct. 1101 (2015) .............................................................. *passim*

*Paragould Cablevision, Inc. v. City of Paragould,*
    930 F.2d 1310 (8th Cir. 1991) ........................................................ 16

*Parker v. Brown,*
    317 U.S. 341 (1943) ................................................................ 9, 16

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.,*
    392 U.S. 134 (1968), *overruled on other grounds by*
    *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752
    (1984) ........................................................................ 19

*S. Motor Carriers Rate Conf., Inc. v. United States,*
    471 U.S. 48 (1985) .............................................................. 12

*Shames v. Cal. Travel & Tourism Comm'n,*
    626 F.3d 1079 (9th Cir. 2010) .................................................. 2, 9, 10

*Town of Hallie v. City of Eau Claire,*
    471 U.S. 34 (1985) ............................................................ 11, 14

*United States v. Topco Assocs., Inc.,*
    405 U.S. 596 (1972) ............................................................... 8

*VIBO Corp. v. Conway,*
    669 F.3d 675 (6th Cir. 2012) ...................................................... 16

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969) .............................................................. 19

**Statutes**

Cal. Health & Safety Code § 1797.1 ........................................................ 6

**Other Authorities**

Fed. R. App. P. 35(b)(1) ........................................................... 1, 2

Fed. R. App. P. 35(b)(2) ........................................................... 2, 3

Jarod M. Bona & Luke A. Wake, *The Market Participant Exception to State-Action Immunity from Antitrust Liability*, 23 Comp. J. Anti. & Unfair Comp. L. Sec. St. B. Cal. 156 (2014) ................................................................. 18

*Bryan K. Toma, The Decline of Emergency Medical Services Coordination in California: Why Cities are at War with Counties over Illusory Ambulance Monopolies,* 23 Sw. U. L. Rev. 285 (1994) ............................................................... 18

## FRAP 35(b) STATEMENT

Appellant AmeriCare MedServices, Inc. respectfully requests rehearing en banc for the following reasons:

***First***, rehearing en banc is warranted under Fed. R. App. P. 35(b)(1) because the panel decision conflicts with decisions of the Supreme Court and this Court on the clear-articulation requirement of the state-action immunity from antitrust test. The panel holds that because some cities are authorized to provide ambulance services under the EMS Act, all cities have express authorization to not only provide services but to also exclude their competitors. The Supreme Court, by contrast, says "simple permission to play in a market" is not authorization to act anticompetitively. *FTC v. Phoebe Putney Health System, Inc.*, 568 U.S. 216, 225 (2013). The panel reasoned that the conduct was foreseeable because some cities had exclusive contracts before the EMS Act was law, but this reasoning directly conflicts with this Court's most recent state-action immunity decision: a " 'foreseeable result cannot ***create*** state authorization itself,' but must itself stem from express authorization, which is 'the necessary predicate for the Supreme Court's foreseeability test.' " *Chamber of Commerce v. City of Seattle*, 890

F.3d 769, 783 (9th Cir. 2018) (quoting *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1084 (9th Cir. 2010)).[1]

***Second***, rehearing en banc is warranted under Fed. R. App. P. 35(b)(1) because the panel decision conflicts with decisions of this Court on the active-supervision requirement of the state-action immunity test. The panel "decline[d] to adopt . . . an active-state-supervision requirement," Panel Opinion at *2 n.1, reasoning that municipalities need never satisfy the active-supervision requirement. This directly conflicts with this Court's decision in *Chamber*, where this Court held that active supervision is required any time "state or municipal regulation by a private party is involved." 890 F.3d at 788. Both *Chamber* and this appeal concern city authorizations for private parties to engage in anticompetitive conduct.

***Third***, rehearing en banc is warranted under Fed. R. App. P. 35(b)(2) because it presents a question of exceptional importance and the panel's decision conflicts with the authoritative decisions of other circuits. The panel "decline[d] to adopt . . . a market-participant

---

1.    *Chamber* was decided after briefing concluded in this appeal. AmeriCare filed a Fed. R. App. P. 28(j) letter promptly after the Court released the slip opinion. Dkt. 111.

exception" to the state-action immunity. Panel Opinion at *2 n.1. Other circuits have recognized the market-participant exception, thus creating a circuit split that warrants en banc consideration.

**_Finally_**, rehearing en banc is warranted under Fed. R. App. P. 35(b)(2) because it presents a question of exceptional importance to state and federal interests. The panel's decision imperils both the national policy in favor of competition and state EMS policy—the two values the doctrine is supposed to protect. The State of California itself told the panel that granting immunity here "will throw California's EMS system into chaos." EMSA _amicus_ Br. at 1 (Dkt. 53-2). If it stands, every one of California's nearly 500 municipalities (Appellant's Reply Br., Dkt. 101 at 10) could unilaterally co-opt the statewide, coordinated EMS scheme by displacing competition to capture monopoly profits in defiance of state policy without any threat of antitrust liability. Vulnerable California patients in need of EMS transport will face higher prices and slower response times that could mean the difference between life and death.

## INTRODUCTION

This appeal turns on State of California EMS policy comprising a statutory framework and ongoing regulation by the state. The State of

California has itself intervened in these proceedings as *amicus curiae* to emphatically disavow the cities' conduct as contrary to state policy. EMSA *amicus* Br. at 21. It further warned that extending the state's immunity to the appellees would throw the state regulatory scheme into chaos. *Id.* Yet the panel ignored the state's objections and granted the state's immunity to the appellees. State-action immunity is **never** appropriate where the antitrust laws pose no conflict with the state regulatory interest, let alone where the state has specifically disavowed the challenged conduct.

The panel's decision directly contradicts well-established Supreme Court and Ninth Circuit case law. It did not engage in the precise inquiry those cases demand. It refused to determine whether the appellees were in fact authorized to displace competition under state policy and declared that state courts should decide questions that state authorities have already decided. It did not determine whether there was a plain and clear state policy in the first place. And it effectively chose not to exercise its (exclusively federal) jurisdiction to decide the reach of the federal antitrust laws.

The panel did not account for either of the only two values it was tasked to balance—supremacy of the federal antitrust laws and a state's interest in its regulatory policy. It instead deferred to the proprietary interests of nonsovereign actors whose conduct was expressly disavowed by the state.

This Court should restore fidelity to the established requirements of the state-action immunity analysis by rehearing this appeal en banc. If left uncorrected, the panel's decision will encourage other nonsovereign actors to engage in anticompetitive conduct that diverges from the state's intent—which is exactly what the state-action immunity test is supposed to prevent. *N. Carolina State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101, 1112 (2015) (purpose of state-action inquiry is to "determin[e] whether anticompetitive policies and conduct are indeed the action of a State in its sovereign capacity"). The panel applied state-action immunity even though the state of California expressly disavowed the anticompetitive conduct by the appellees.

## THE STATE POLICY

The California EMS Act established a comprehensive regulatory policy designed to ensure statewide coordination of EMS services so all

California citizens receive the prehospital EMS to which they are entitled. In fact, it was enacted because the prior municipal-based system failed that objective. Appellant's Opening Br. at 4 (Dkt. 50). This carefully crafted scheme overwhelmingly requires and relies on competition—and exceptions to the rule requiring competition are decided on a case-by-case basis by EMSA, the state agency administering the state's EMS Act. Cal. Health & Safety Code § 1797.1. In other words, the legislature delegated all final authority on state EMS policy to EMSA, and thus EMSA *is* the state, as sovereign.

Municipalities play no role in the implementation of the EMS Act, except that some can act as a service provider. The two-tiered regulatory system consists of (1) county local EMS agencies and (2) EMSA. Cities are authorized to ***provide*** services if they meet specific criteria under Section 1797.201, and even then only after their eligibility is determined by EMSA. The complaints—which must be taken as true—plead specific facts showing that none of the cities meets this criteria. Appellant's Opening Br. at 6 (Dkt. 50).

Even if the city appellees were eligible to continue to act as service providers under Section 1797.201, nothing in the EMS Act grants

municipalities any authority to exclude their competitors. *Id*. at 18–22; *see also* EMSA *amicus* Br. at 18 ("nothing in the statutory scheme supports the conclusion that section 201 cities or fire districts can self-designate as the 'sole deciders' of EMS services").

Under the Act, EMSA has the exclusive obligation to approve a detailed plan every year that determines whether individual zones meet the strict preconditions to overcome the default presumption of open competition. *See* § 1797.224. EMSA has determined that each of the zones in which these cities are located do not meet the requirements for exclusivity each year that it has reviewed and approved the statewide plan. Appellant's Opening Br. at 6, 21–22; *see also* EMSA *amicus* Br. at 15–16 ("Consistent with AmeriCare's allegations, the State Authority has determined that all twelve City Appellees are to be operating "non-exclusive zones."). Moreover, it has established a process by which cities can seek an eligibility determination under Section 1797.201. None of the appellee cities have been deemed eligible. Appellant's Opening Br. at 6, 18–20.

EMSA and the Office of the Attorney General of the State of California have unequivocally confirmed that the city appellees were not

acting pursuant to the state policy: they were not among those entities eligible under Section 1797.201 and, regardless, Section 1797.201 does not provide any authorization to act anticompetitively. *See* EMSA *amicus* Br. at 15–16, 22.

## REASONS FOR GRANTING REHEARING EN BANC

I. **THE PANEL'S DECISION CONFLICT WITH PRIOR DECISIONS OF THIS COURT AND BINDING PRECEDENT OF THE SUPREME COURT**

A. **The Supreme Court and this Court Grant State-Action Immunity Only to Those Who Acted Pursuant to State Competition Policy**

The federal antitrust laws are the "Magna Carta of free enterprise." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972). This "national policy in favor of competition" has existed and been reaffirmed consistently for more than a century. *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 106 (1980). It is so important to the national interest that Congress trusts its adjudication to the federal courts alone.

States do not have the power to set aside the well-settled judgment of Congress, but they do have the residual power to regulate under the Tenth Amendment. *N.C. Dental*, 135 S. Ct. at 1111 ("The power to attain

an end does not include the lesser power to negate the congressional judgment embodied in the Sherman Act."); *see also Parker*, 317 U.S. at 351 (states cannot "give immunity to those who violate the Sherman Act by authorizing them to violate it"). So the Supreme Court has carved out a narrow exemption for state action: the Sherman Act does not "bar States from imposing market restraints 'as an act of government.' " *FTC v. Phoebe Putney Health System, Inc.*, 568 U.S. 216, 225 (2013) (quoting *Parker v. Brown*, 317 U.S. 341, 352 (1943)).

Like all antitrust exemptions, the state-action immunity is strictly limited, narrowly circumscribed, and "disfavored." *Id.* (quoting *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)); *see also Shames*, 626 F.3d at 1084 ("The state-action immunity doctrine is 'disfavored,' and is to be interpreted narrowly, as 'a broad interpretation of the doctrine may inadvertently extend immunity to anticompetitive activity which the states did not intend to sanction.' "). In fact, it is not an immunity at all— it is a limitation on the substantive reach of the Sherman Act. And its **sole** purpose is to protect the sovereign states' interests to regulate. *N.C. Dental*, 135 S. Ct. at 1109.

Municipalities are not sovereign and do not independently qualify for the exemption. *See id.* at 1110–11. A nonsovereign entity is ***only*** entitled to the exemption where it affirmatively shows it was faithfully acting pursuant to a "clearly articulated and affirmatively expressed state policy" to displace competition and its conduct was actively supervised by the state itself. *Midcal*, 445 U.S. at 105.

This Court very recently explained that "[t]he Supreme Court has consistently demonstrated reluctance to careen beyond the bounds of state authorization in its application of the clear-articulation test. *Chamber*, 890 F.3d at 785. Thus, the "inquiry with respect to the clear-articulation test is a precise one." *Id.* at 782. There are two steps to this inquiry: First, the state must have "***specifically authorized the conduct*** alleged to violate the Sherman Act. *Id.* That "authorization must be ***plain*** and ***clear***." *Id.* (emphasis added). Second, and ***only if*** specific state authorization exists, step two asks whether the challenged conduct was foreseeable. *Id.* Foreseeability determines "the ***reach*** of the antitrust immunity that stems from an ***already authorized*** monopoly, price regulation, or other disruption in economic competition." *Id.* (quoting *Shames*, 626 F.3d at 1084) (second emphasis added). Finally,

although municipalities implementing state policies alone are entitled to the "narrow exception" of the requirement to also show active state supervision set forth in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985), municipal activity is not exempt from the requirement where private parties are also involved. *Id.*

## B. The Panel's Decision Is Inconsistent with Supreme Court and Ninth Circuit Precedent

The panel's decision does not engage in the precise inquiry demanded by established law: it bypassed that analysis in deference to the interests of nonsovereign actors. But that deference is a zero sum game that comes at a cost: subordination of the state and federal interests that the state-action immunity test is designed to protect.

*First*, the panel's decision focused on a single statute, read in isolation, to find that there was enough of a doubt about state policy that the matter should be decided by state courts. In doing so, it ignored the entire statutory scheme, its exclusive duty to decide the reach of the federal antitrust laws, the factual allegations of the complaint, and the state's declaration that disavowed the appellees' conduct.

"A state law or regulatory scheme cannot be the basis for antitrust immunity unless, first, the State has articulated a clear policy to allow

the anticompetitive conduct . . . ." *Ticor*, 504 U.S. at 631. Immunity is only "conferred out of respect for ongoing regulation by the State." *See id.* at 633. " '[T]he relevant question is whether the regulatory structure which has been adopted by the state has ***specifically authorized the conduct*** alleged to violate the Sherman Act.' " *Chamber*, 890 F.3d at 782 (quoting *Cost Mgmt. Servs., Inc. v. Wash. Nat Gas Co.*, 99 F.3d 937, 942 (9th Cir. 1996)). In other words, the task is to determine "whether an anticompetitive policy is indeed the policy of a State." *N.C. Dental*, 135 S. Ct. at 1105.

Here, the state articulated a policy that ***requires*** competition unless it determines otherwise. *See* § 1797.224. The state has consistently reaffirmed through its ongoing regulation that its policy with respect to the geographic markets in question is open competition. That it authorizes other government entities in different geographic markets to displace competition is irrelevant. *Phoebe Putney*, 568 U.S. at 235 ("[R]egulation of an industry, and even the authorization of discrete forms of anticompetitive conduct pursuant to a regulatory structure, does not establish that the State has affirmatively contemplated other forms of anticompetitive conduct that are only tangentially related."); *S. Motor*

*Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 64 (1985) (The state must "clearly intend[] to displace competition in a particular field with a regulatory structure . . . in the relevant market.").

***Second***, even if Section 1797.201 authorized ***these particular*** appellees to continue providing EMS services or the panel correctly decided that it is up to state courts to determine eligibility, Section 1797.201 is insufficient for a clearly articulated policy to displace competition because " 'simple permission to play in a market' "—such as an authorization to provide EMS services—does not include the implied authority to act anticompetitively. *Phoebe Putney*, 568 U.S. at 231 (citation omitted).

***Third***, the panel refused to inquire into whether that statute even applied to the appellees, reasoning that whether a particular city meets the statutory pre-conditions is a question for California courts. Absent a plain and clear authorization, immunity does not apply. They do not get the benefit of the doubt because erring on the side of "recognizing immunity . . . is inconsistent with the principle that 'state-action immunity is disfavored.' " *Id.* at 235–36 (citation omitted). The appellees had the burden to show that they acted pursuant to a clearly articulated

state policy, and the panel's decision relieves them of this requirement precisely because the authorization they claimed was anything but plain and clear. A federal court deciding the state-action immunity issue must decide the relevant issues before it; it can't apply immunity and dismiss a federal antitrust claim based upon the happenstance that a state court hasn't yet decided whether state policy authorizes them.

**Fourth**, the panel's decision conflicts with recent decisions by the Supreme Court and this Court that the "involvement of private parties in municipal regulation renders [the conduct] ineligible for the municipality exception outlined in *Hallie*." *Chamber*, 890 F.3d at 788 (citing *Hallie*, 471 U.S. at 47).

Active supervision "is an essential condition of state-action immunity when a nonsovereign actor has 'an incentive to pursue [its] own self-interest under the guise of implementing state policies,'" *see N.C. Dental*, 135 S. Ct. at 1113, because the "first requirement—clear articulation—rarely will achieve that goal by itself." *Id.* at 1112. Active supervision avoids "resulting asymmetry . . . by requiring the State to review and approve interstitial policies made by the entity claiming immunity." *Id.* Indeed, no longer can a municipality rely on

"nomenclature alone" to qualify for *Hallie*'s "narrow exception." *Id.* at 1113–14.

This case underscores the importance of active supervision where the defendants exploited an unclear transitional statute to rationalize and excuse their conduct in defiance of ongoing state regulation. The state has, in fact, exercised supervision and has flatly disapproved of their conduct as inconsistent with state policy goals. *See* Appellant's Opening Br. at 6. The panel's opinion disregards the "resulting asymmetry" between the state's intent and the appellees' conduct, and thus leads to an absurd result.

## II. THE ISSUES PRESENTED BY THIS CASE ARE OF EXCEPTIONAL IMPORTANCE

The issues presented by this case are of exceptional importance for two reasons: First, the panel expressly declined to adopt the market-participant exception to the state-action immunity that has been adopted in other circuits. En banc review is warranted, particularly here where it was created in a footnote without analysis. Second, the panel decision imperils the only two values relevant to the state-action inquiry: the supremacy of the federal antitrust laws and the states' residual power to regulate. If it stands, the national policy in favor of competition will

effectively step aside whenever a municipality claims authority to displace competition from any arguable authority it can muster even if the state ultimately disavows it. And the State of California's coordinated statewide EMS scheme will, in the state's own words, be "throw[n] . . . into chaos." EMSA *amicus* Br. at 1 (Dkt. 53-2).

## A. The Panel's Decision Creates a Circuit Split on the Market-Participant Exception

In a footnote, the panel's decision "decline[s] to adopt . . . a market-participant exception" to the state-action immunity. Panel Opinion at *2 n.1. Other circuits, however, have recognized the market-participant exception because it is faithful to the Supreme Court's state-action immunity decisions.[2] This Court should exercise en banc review to

---

2. The Third, Sixth, and Federal Circuits have recognized the market-participant exception. *See, e.g.*, *VIBO Corp. v. Conway*, 669 F.3d 675, 687 (6th Cir. 2012) (state acting as "commercial participant in a given market" is not protected); *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 265 n.55 (3d Cir. 2001) (recognizing market-participant exception but declining to apply it because state was not acting as buyer or seller); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 948 (Fed. Cir. 1993) (*Parker* extends only to "sovereign capacity" and not market participant conduct). The Eighth and Second Circuits, however, have decided not to extend current law. *See, e.g.*, *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1312–13 (8th Cir. 1991) ("[T]he market participant exception is merely a suggestion and not a rule of

consider whether it should depart from those circuits on a question which the Supreme Court has expressly reserved.[3]

The U.S. Supreme Court's state-action immunity cases have long recognized the fundamental difference between "States in their governmental capacities as sovereign regulators" from their capacity "as a commercial participant in a given market." *Omni*, 499 U.S. at 374–75; *see also Jefferson Cnty. Pharm. Ass'n, v. Abbott Labs.*, 460 U.S. 150, 154 n.6 (1983) (distinguishing traditional state-as-sovereign activity from state commercial activity and holding that the antitrust laws apply with full force against states when "they are engaged in proprietary activities" that are "not 'indisputably' an attribute of state sovereignty"). Regulatory actions taken as a sovereign are the only purpose for which the state-action doctrine was designed and, indeed, the Supreme Court never contemplated that states and municipalities could use state-action immunity as a shield for their anticompetitive conduct when they are

---

law."); *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 81 (2d Cir. 1998) (concurring with Eighth Circuit).

3. *See Phoebe Putney*, 568 U.S. at 225 n.4 (declining to consider market-participant exception because it was not raised by the parties while acknowledging that the possibility of a market-participant exception remains open (citing *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 374–75 (1991)).

active market participants. Jarod M. Bona & Luke A. Wake, *The Market Participant Exception to State-Action Immunity from Antitrust Liability*, 23 Comp. J. Anti. & Unfair Comp. L. Sec. St. B. Cal. 156, 163 (2014). None of the appellees was acting in a regulatory capacity in this case— they were merely providing or contracting for commercial services.

Exempting market-participant conduct from antitrust scrutiny undermines federal antitrust policy. State and local entities with a free pass to violate the antitrust laws have a financial incentive to participate in commercial markets in anticompetitive ways—and that conduct is often very profitable. *See Bona & Wake, supra* at 163. Indeed, profit is exactly why California municipalities have become commercial participants in the market for prehospital EMS services. *See Bryan K. Toma, The Decline of Emergency Medical Services Coordination in California: Why Cities are at War with Counties over Illusory Ambulance Monopolies,* 23 Sw. U. L. Rev. 285, 289 (1994) ("Unfortunately, this revenue-enhancing agenda pits cities and fire districts in direct competition with private ambulance companies."). Applying the market-participant exception under these circumstances would ensure the

doctrine remains true to its purpose of balancing federal antitrust supremacy with the states' remedial power to regulate.

## B. The Panel's Decision Imperils Both of the Only Two Interests the State-Action Immunity Seeks to Protect

The "public interest in vigilant enforcement of the antitrust laws" is fundamentally important to the national economy. *Lawlor v. Natl. Screen Serv. Corp.*, 349 U.S. 322, 329 (1955). The state-action immunity, on the other hand is "disfavored." *Phoebe Putney*, 568 U.S. at 225. The panel's decision creates a presumption of municipal immunity in cases where state policy is anything but "plain and clear," *Chamber,* 890 F.3d at 782, and will serve to disincentivize private litigants—who are often small businesses—from suing to enforce antitrust violations as Congress intended.

The Clayton Act does "not merely . . . provide private relief, but [serves] the high purpose of enforcing the antitrust laws." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31 (1969). Through it, Congress expressed a policy that "private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318 (1965). The policy is most effective where private antitrust litigation is "an ever-

present threat to deter" anticompetitive conduct. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).

The panel's decision does exactly the opposite: it sends a message to nonsovereign entities that they can actively flout state policy by acting anticompetitively without authorization and without the threat of federal antitrust liability. The small businesses most affected by their conduct will not gamble their limited resources to sue them as Congress intended. And by flouting state policy they return the state to the patchwork city-by-city approach that the California legislature rejected when it passed the EMS Act. The state couldn't be more clear: the panel's decision "will throw California's EMS system into chaos." EMSA *amicus* Br. at 1.

The panel's decision promotes the proprietary interests of rogue nonsovereign entities at the expense of the only two interests relevant to the state-action immunity: the supremacy of the federal antitrust laws and the state's regulatory policy. The Ninth Circuit should reconsider this drastic departure from established law en banc.

## CONCLUSION

For the foregoing reasons, AmeriCare MedServices, Inc. respectfully requests that the Court grant its petition for rehearing en banc and reverse the Panel's decision affirming the district court.

Date:       September 10, 2018

BONA LAW PC

*/s/ Aaron R. Gott*
AARON R. GOTT

*Attorneys for Appellant*
*AmeriCare MedServices, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:	September 10, 2018

BONA LAW PC

*/s/ Aaron R. Gott*
AARON R. GOTT

*Attorneys for Appellant*
*AmeriCare MedServices, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Word 2016, Century Schoolbook 14-point font.

Date: September 10, 2018

BONA LAW PC

*/s/ Aaron R. Gott*
AARON R. GOTT

*Attorneys for Appellant*
*AmeriCare MedServices, Inc.*

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 27 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICARE MEDSERVICES, INC., | No.    17-55565 |
| Plaintiff-Appellant, | D.C. No. 8:16-cv-01703-JLS-AFM |
| v. | |
| CITY OF ANAHEIM; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted August 7, 2018
Pasadena, California

Before: HAWKINS and CHRISTEN, Circuit Judges, and HOYT,[**] District Judge.

AmeriCare MedServices, Inc. appeals the dismissal of its antitrust and declaratory-relief claims. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1068 n.5 (9th Cir. 2018) (citing

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Kenneth M. Hoyt, United States District Judge for the Southern District of Texas, sitting by designation.

*City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149, 1153 (9th Cir. 2017)),

we affirm.

Dismissal was appropriate because appellees are immune from antitrust

liability.[1]  *See Parker v. Brown*, 317 U.S. 341, 350–51 (1943).  Municipalities enjoy

state-action antitrust immunity when acting "pursuant to a 'clearly articulated and

affirmatively expressed' state policy to displace competition.'"  *FTC v. Phoebe*

*Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013) (quoting *Community Commc'ns*

*Co. v. Boulder*, 455 U.S. 40, 52 (1982)).  The city appellees did just that; California

law specifically authorizes cities "to maintain control of the [emergency medical]

services they operated or contracted for in June, 1980" and "make decisions as to

the appropriate manner of providing those services."[2]  *County of San Bernardino v.*

---

[1] We decline to adopt either an active-state-supervision requirement or a market-participant exception.  *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985) ("[A]ctive state supervision is not a prerequisite to exemption from the antitrust laws where the actor is a municipality rather than a private party."); *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1058 n.5 (9th Cir. 1987) (suggesting that a government entity is not a market participant when performing "integral operations in areas of traditional governmental functions" (quoting *Reeves, Inc. v. Stake*, 447 U.S. 429, 438 n.10 (1980))).

[2] Whether § 1797.201 properly applies to each city appellee is a question for California courts—not us.  *See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372 (1991) (applying "a concept of authority broader than what is applied to determine the legality of the municipality's action under state law"); *Kern-Tulare Water Dist. v. City of Bakersfield*, 828 F.2d 514, 522 (9th Cir. 1987) ("Where ordinary errors or abuses in exercise of state law . . . serve[] to strip the city of state authorization, aggrieved parties should not forego customary state corrective processes . . . in favor of federal antitrust remedies." (citations omitted)).

2

*City of San Bernardino*, 938 P.2d 876, 890 (Cal. 1997); *see* Cal. Health & Safety Code § 1797.201 (preserving the pre-1980 status quo by allowing cities to continue "providing [emergency medical] services" until reaching an agreement with the county). Further, since many cities had entered into exclusive agreements prior to 1980, an "anticompetitive effect was the 'foreseeable result[.]'"[3] *Phoebe Putney*, 568 U.S. at 227 (quoting *Eau Claire*, 471 U.S. at 42). And because the city appellees are immune from antitrust liability, CARE Ambulance Service, Inc. ("CARE") is as well. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 878 (9th Cir. 1987) (immunizing "state action, not merely state actors").

CARE is also immune under the *Noerr–Pennington*[4] doctrine, which shields private actors "from antitrust liability for petitioning the government, even when the private actors' motives are anticompetitive." *Sanders v. Brown*, 504 F.3d 903, 912 (9th Cir. 2007). CARE's efforts to obtain or maintain exclusive contracts with the city appellees falls squarely within the scope of *Noerr–Pennington*. *See id.* ("*Noerr–*

---

[3] *See also* Cal. Health & Safety Code § 1797.6 (providing "for state action immunity under federal antitrust laws for activities undertaken by local governmental entities in carrying out their prescribed functions"); *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791 F.2d 755, 758 (9th Cir. 1986) (concluding pre-*Phoebe Putney* that California's Emergency Medical Services Act "has a foreseeably anti-competitive effect").

[4] *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

*Pennington* immunity protects private actors when they . . . enter contracts with the government." (citations omitted)).[5]

**AFFIRMED.**

---

[5] California Emergency Medical Services Authority's (Doc. 53) and Emergency Medical Services Administrators Association of California's (Doc. 54) motions to become amicus curiae are **GRANTED.** CARE's motion to take judicial notice (Doc. 77) is **DENIED.**